Thank you, Your Honor. Good morning. May it please the Court, I'm James Moore on behalf of the First State Bank of Roscoe and John Byers. In 2009, the Bankruptcy Court in this case decided that asserting and litigating two counterclaims that sought to collect debt to the extent that the debt was not discharged in bankruptcy could not violate the Bankruptcy Court's discharge injunction. In 2016, the Bankruptcy Court, after many years of further proceedings in state court, decided exactly the opposite and found that in fact there was a willful violation of the discharge injunction. That decision and ruling on contempt is wrong for two reasons. The first relates to issue preclusion based on state law and the second relates to the merits. I'm going to start with the issue preclusion argument today and then and then talk about the merits. Counsel, I think there may be some question as to whether the preclusion argument was raised below. Could you address that issue? Yeah, there were three preclusion arguments that were actually raised, Your Honor. One of them is based on preclusion with respect to the Bankruptcy Court's decision in 2009 granting the motion to dismiss the adversary complaint that was filed. The Bankruptcy Court's abstention that was appealed to the bankruptcy appellate panel and affirmed. And the last one is the preclusion argument based on the failure to litigate the discharge injunction enforcement issue in state court. That issue was not addressed by the District Court in its lengthy 36 page decision on appeal from the Bankruptcy Court's ruling even though it was clearly raised and it's clearly raised on appeal here. It's the argument that I want to focus on with respect to preclusion. And the reason that argument works is because this court said in the apex decision that there is concurrent jurisdiction for a state court to consider the issues of the discharge and whether debt was is within the scope of discharge and enforcement of the discharge injunction. The debtor in Apex filed a motion in state court, I mean in Bankruptcy Court, asking that the Bankruptcy Court reopen the case and hold the homeowners who had started an action in state court against the debtor that they be held in contempt for violating the discharge injunction. And this court affirmed the refusal to fully competent to litigate matters involving the discharge and the discharge injunction. The apex decision is not the only word on the subject because in this particular case the other word on the subject is the bankruptcy appellate panel decision. Same issues, same result. The debtors in this case sought contempt when they filed an adversary complaint before the court. And when that was dismissed in 2009 and went up to the bankruptcy appellate panel, the bankruptcy appellate panel said there is concurrent jurisdiction in state court for the court to enforce the discharge and the discharge injunction. Enforcement was clearly at issue. And the bankruptcy appellate panel said that can be litigated in state court. There was clearly no expectation after that in further proceedings in state court that buyers or First State Bank would be back in bankruptcy court at a later date on the very issue that the bankruptcy appellate panel said can be handled by the state court. So to the extent that that there's an argument that there wasn't jurisdiction in state court to consider whether there was a willful violation of the discharge injunction, that argument is simply wrong as a based on both APEX and based on the bankruptcy appellate panel's decision. And I know that the law of the case argument gets a little bit confusing, but I fail to understand how the bankruptcy appellate panel's decision cannot be law of the case with respect to that issue in these proceedings. There's a mandate from the bankruptcy appellate panel that goes back and it issues are litigated in state court. The other thing that I think it's important to keep in mind with respect to the preclusion argument is that at the end of the day, and this goes partly to the merits and so it gets a little bit confusing, but at the end of the day, the bankruptcy court, even though the litigating the counterclaims, that's clearly what paragraph 20 of the motion for contempt that was filed and decided by the bankruptcy court the second time around in 2016, it says the assertion of these counterclaims and litigating the counterclaims is what was a willful violation. That's not what the bankruptcy court actually found contempt based on. It found contempt based on other conduct of John Byers that had been litigated in state court. And at the end of the day, if you're going to base your determination of a willful violation, your enforcement action, on conduct that occurred in state court, when the state court has jurisdiction in the first place to consider enforcement of the discharge injunction, why would that matter not be resolved in state court? There's no answer to that in this case. With respect to the principles of issue preclusion, that is a matter of South Dakota law. South Dakota law clearly says that issues in a matter that could be litigated, but are not, are barred from further litigation if there is a final judgment on the merits. And there's clearly a full and fair opportunity to litigate here as determined by the bankruptcy appellate panel and as determined in the apex decision. There was clearly extensive proceedings in state court. There's clearly a final judgment from the South Dakota Supreme Court. At that point, the matter is over. There is a suggestion that the bankruptcy court made an invitation to come back. My response to that is, it can't change the law of issue preclusion. It can't change the law of jurisdiction. And consider the context in which it was made. The bankruptcy court in 2009 said to the stablers, you're here forum shopping. You're here because things aren't going well for you in state court. We're on the eve of what you think may be an adverse determination. You're forum shopping. Go back to state court. The bankruptcy appellate panel affirms that and calls it egregious forum shopping. So in that context, there's clearly, um, I think no basis to conclude that the bankruptcy court's suggestion, um, with respect to one of the abstention factors somehow re re writes the law of issue preclusion and jurisdiction. Well, can a court, I guess this sort of is the issue that maybe we have to grapple with this, but can a court partially abstain? That seems to be the argument here that the bankruptcy court said, go to state court, decide if it's dischargeable and if it's not dischargeable, um, then, or if it is dischargeable, then come back to me and I'll decide the contempt. Can they do that? I'm not aware of any authority that supports that. Your honor, any authority says they can't do. I think the bankruptcy appellate panel decision says you can't. There's a mandate that says these issues are to be litigated in state court and it includes enforcement of the discharge injunction. I think that's the end of the story with respect to the merits. Um, the, there's, there's a problem here, as I pointed out, um, in connection with the, um, the question of what's the basis for the contempt. If you look at paragraph 20 of the motion for contempt, it's clearly limited to litigating the counterclaims in state court. That's the very conduct that the bankruptcy court found in 2009 could not be a violation of the discharge injunction because it was only seeking to collect debt to the extent that it was not discharged. To the extent that the willful, the willfulness finding is ultimately based on other conduct. Um, I think it's very important to keep in mind the context of what was going on here. Um, there were, there were many transactions that were entered into after the bankruptcy discharge in this case between not only Brad and Brenda Stabler, the debtors, but also, uh, the parents, Stan and Rose, who were not in bankruptcy and to whom the bankruptcy discharge did not apply. And with respect to those post discharge agreements, it was a very complicated situation. The judgment in this case in state court runs to 17 pages. This was not a one sided affair in terms of the outcome by any means. But with respect to those agreements, this court in the venture bank case said that the law is confusing and in irreconcilable conflict so that to the extent that the agreement is not merely to forbear from foreclosing on debt, but actually does something much more than that has happened in this case. There were all kinds of additional loans that were extended, including to the, including to the parents who were not in bankruptcy. Um, in that context, there's clearly a good faith, uh, basis for not only litigating the counterclaims, but for John Beyer and First State Bank to have taken the positions that they did with respect to those activities. And to the extent, um, yeah, yes, your honor. But even with respect to the primary transaction, if you look at the verdict form, um, on the, on the claim that was tried to the jury, of course, that's a claim against John or Stan and Rose, the parents not against Brad and Brenda. Um, the jury found that only part of the debt, um, could not be enforced. The Ipswich State Bank debt, even though the trial court judge and state court said this, this transaction stinks, I don't like it, still found that it was enforceable. So yes, there was, there was debt that was still enforced against, uh, both Brad and Brenda and Stan and Rose, uh, as a result of the state court proceedings. So I think it's, I think it's important to keep that good, the context of the claim that there's been a willful violation here. Um, especially when the willfulness itself was not litigated in state court. Um, there's a piling on with respect to the conduct of John Byers by, uh, the state court judge, by the South Dakota Supreme Court, by the bankruptcy court in 2016, by, um, judge Lang, the district court on appeal after that. But there's no discussion of whether that conduct there's clearly, it clearly was not litigated in the context of, is this a willful violation of the discharge injunction? Um, and there was clearly no opportunity for, uh, the bank and Mr. Byers to litigate that issue, given that when the case came back to the bankruptcy court in 2016, what was evident from the motion is that the only claim was, we're seeking contempt based on litigating the counterclaims and that had already been determined. I'm going to reserve the rest of my time. Thank you. Thank you judge. Good morning judges. Um, my name is, uh, Pat Doherty. I'm an attorney from Sioux Falls. Um, I represent Brad and Brenda Stabler in this matter. Uh, this is my first appearance in front of the eighth circuit in 37 years of practicing law. Um, I'd like to, um, start with just a little bit of a factual background, uh, to put things in, in the context for the court, unless the court has some questions, just questions they'd like to ask the initially. Um, Stabler's. Well, I do have one question. Are you, is it a fact that the only basis for the contempt was the counterclaim? Yes. Okay. And one of the things that troubles me about the, about the contempt motion is your client brings it in state court to say that that is, it has been discharged. And I presume they did that because, uh, the bank, um, uh, had been doing something and Mr. Byers had been doing something to try to enforce the debt. We raised the bankruptcy discharge as an affirmative defense in the state court action. Okay. So I thought you brought the case in state court. Maybe I'm getting mixed up about the proceed about the, okay. So where it gets confusing is, is that the, the counts three and four that, um, we're talking about today were counterclaims brought by first aid bank of Roscoe. Right. So, so they're counterclaims to what did you fight? Did you file a complaint? Did you file a complaint in state court against the bank saying these debts have been discharged? Yes. Okay. So they file a counterclaim saying to the extent they're not discharged, we want a judgment. Is that what happened? Correct. Okay. Which leads then to my question, which is that it's, it's alleged in the, in the briefing and I presume probably correct that that would be a compulsory counterclaim and to the extent that they have a, an argument that any of the that's non-dischargeable, why can't they bring a compulsory counterclaim? I guess the fact that it's a compulsory counterclaim is what bothers me. So if I'm not being very articulate, but to our side of the case judge, it boils down to this. Um, the compulsory counterclaim was a collection activity versus a request for a declaratory judgment as to whether or not the debt was discharged. Because clearly the bank had knowledge of the bankruptcy. Uh, they received notice of the bankruptcy. They were scheduled as a creditor in the bankruptcy. There was no reaffirmation of the debt between the stablers and the bank and the debtors received a discharge. So the discharge, uh, was clearly out there. And so bringing a counterclaim to collect on debt that was discharged, uh, clearly brought the discharge into issue and the contempt into issue. But if it's a compulsory counterclaim, if they hadn't brought it, then they would never be able to collect on the debt. If they, if they were corrected, any of it was non-dischargeable. Yeah. I think that they should have brought it as a declaratory judgment action to ask the court to determine whether or not any of the debt was dischargeable versus suing on the debt, taking the position that the debt was not dischargeable when the bankruptcy court had already ruled that the debt was discharged. I thought the district court had, I mean, the bankruptcy court had abstained. You said the district court ruled it was discharged?  Procedurally, Judge, what happened was, um, the, um, the action was brought in state court and, um, the counterclaims were presented. The debtor then filed a complaint. The debtor alleged the defense of discharge in bankruptcy and then filed a complaint for contempt in bankruptcy court requesting sanctions against the bank because the action violated the discharge injunction. Okay. And the bankruptcy judge, um, decided to abstain, not dismiss the matter because, um, he didn't want to rule on the discharge injunction, excuse me, the discharge because the state court had concurrent jurisdiction to rule on the discharge and the discharge was first raised in circuit court. The circuit court then went on to rule that all of the debt that first state bank of Roscoe, um, was going after was all debt that had been discharged. Debtors then brought their motion in bankruptcy court for contempt and the bankruptcy judge looked at the written findings of the circuit court judge and adopted those written findings that all of the debt was discharged and then found first state bank of Roscoe and buyers in contempt. Council, there's a fact that I'd like to explore a little bit further with you because I think it may be important. It's my understanding that, um, the bank wasn't just litigating the enforceability of a debt alone, but in fact, they were litigating the enforceability of an agreement, uh, that you're understanding. That's an issue that's, that's on appeal. Yes. And, um, I can, um, address that argument if the court would like. Um, in this case, um, the, um, appellants being first state bank of Roscoe, um, they argue that there's a split of authority concerning whether or not the requirements of section 5 24 C, which is the discharge section, apply when a debtor agrees to pay discharge debt in exchange for a creditor's promise not to foreclose on liens that had been passed through the debtors bankruptcy. Um, the case law out there says that in that situation, the surviving liens must constitute new and independent consideration necessary to make the discharge statute inapplicable under the cases that the pellet relies upon. In this case, there was no good faith on behalf of, uh, first state bank of Roscoe. The findings were that, um, they worth of debt that was discharged. Um, they didn't have any of the, uh, uh, these, uh, surviving liens of praise to show that they had all supported a claim, uh, post discharge of $650,000. Um, they took, um, they wouldn't have taken significant steps to foreclose if they felt that they had adequate collateral. Um, in this case, buyers didn't act in good faith because he encouraged the bankruptcy. Uh, he suggested the bankruptcy lawyer for my clients, who, in fact, was the bankruptcy lawyer for first a bank of Roscoe, which seems surprising. And, um, the findings of the, um, of the circuit court judge and Judge Lang were that, uh, that buyers devised a scheme and pressured, uh, and use coercive behavior and straw man to convince, uh, Brad and Brenda Stabler to sign new promissory notes for debt that had been discharged in the bankruptcy. The, um, I want to mention something that that council brought up about, um, Judge Nail, um, abstaining, um, to have the discharge issue and the enforceability of the discharge issue, um, litigated in state court. And I want to raise two and that is, and I quote, and if the state court determines, albeit contrary to the express language of counts three and four of buyers, state court counterclaim, any of those debts have been discharged, allow debtors to renew their complaint in bankruptcy court. And that's exactly what the debtors did. And, uh, I emphasize the word the judge now use allow. And, and that's, that's why when the state court judge said this debt is, was all discharged and it wasn't properly reaffirmed. That's why we went back to the bankruptcy court and filed a motion for contempt. And then in terms of enforcement, um, for state bank of Roscoe takes the position that the state court, uh, should have enforced this. And, um, I want to quote here, uh, a site from my brief, uh, furthermore proceedings to enforce the statutory injunction under 11 USC subsection five 24 a our core proceedings under 28 USC subsection one 57 B two O and willful violations of section five 24 a two are punishable or otherwise enforceable by bankruptcy judges using their authority under 11 USC subsection one oh five a of the bankruptcy code. And the authority for that is Henry Hardy, 97 fed third, 1384, the 11th circuit, 1996. Counsel when the bank counterclaim this counterclaim we've been talking about, didn't it have language in it that, uh, yeah, stated that the bank was only attempting to recover. That portion of the indebtedness that had that had not been discharged. Correct. And then subsequently, when yeah, when your clients went to bankruptcy court seeking that contempt ruling judge for clarification, is this the first time or the second time? Okay. Am I remembering correctly that the bankruptcy judge included some language in that order that seemed to indicate that that language in the counterclaim should be would be effective and that and that the bank would only be the counterclaim. It would only legally be entitled to recover portions of the death that had not been discharged. Judge in in dicta. That's what he said. But he did abstain and said that, okay, the issue of the discharge in bankruptcy has been first raised in the state court. And and now, uh, Mr Daugherty, you're now raising that issue in bankruptcy court. And, um, the state court has bankruptcy judge seemed to express an opinion on that, at least that that this isn't would be an effective way to bring the counterclaim to stay. I'm only seeking to recover that part of the death that's not been discharged. And what I'm getting at is a seeming inconsistency of that language about the bankruptcy court and then the subsequent decision by the by the state court. Okay. Um, in my brief under my discussion in page five, I have a quote from the bankruptcy court in that same decision that you're talking about, Judge. And the judge says, and if the state court determines, albeit contrary to the express language of counts three and four of buyer state court counterclaim, any of those debts have been discharged, allow debtors to renew their complaint. So the judge left the door open. He didn't totally buy into the language of counts three and four. He abstained and said that the yeah. Um, can I quickly address issue preclusion? I just have um, I just want to raise the point that issue of preclusion only works as to the issue specifically appealed and passed upon by the appellate court here. The issue on appeal at that time was the abstention. It was not the motion to dismiss. So issue of preclusion did not apply to the motion to dismiss. And thank you judges. How much time does Mr Moore have? Council. Okay. Thank you, Your Honor. Judge Malloy, there was really declaratory relief that was requested on both sides. The stablers initial complaint in state court file in 2007 sought declaratory relief. There was later an amended complaint that brought additional state law claims based on fraud, breach of fiduciary duty, those kinds of claims. The counter, there was a, uh, an answer in a counterclaim that also essentially sought declaratory relief. And I think under the Taggart case, which establishes the standard for willful violation of the discharge injunction. Once the, once the bankruptcy court in 2009 in connection with the motion to dismiss said to the extent the counterclaims seek to collect the debt only to the extent that it's not discharged, that can't possibly violate the discharge injunction. There's clearly a good faith basis for the bank and Mr Byers to continue litigating that issues even if the outcome is ultimately bad. And I think what's most troubling about the merits is that at the end of the day, um, there's a strict liability standard that applies here. There is, uh, irreconcilable conflict and confusing case law with respect to post discharge agreements of the sort at play here. Byers and the bank said, we'd like to litigate that. And to the extent that what we did was okay, we'd like to collect on that debt, but only to that extent. And after losing in state court, because the state court accepts this line of cases as opposed to this line of cases, then the bankruptcy court says, well, you're in willful violation of the discharge injunction. That's a strict liability standard and it's contrary to the, to establish law in this circuit. Well, it seems to me that maybe one of the, one of the problems with this case is that Mr. Doherty just said the only thing that formed the basis of the contempt was the counterclaim. But I, I, from what I'm reading, what, what judge nail said, he was looking at all the conduct that even led up to this and that, and that you were being fraudulent and sneaky and, and, and that it was a lot, he seemed to look at a lot more than just the counterclaim. And, and I don't know how we sort that out. Well, he absolutely did in 2016, your honor. And we've argued that that's improper. All that was at issue, because all that's, all that was at issue according to the motion is litigating the counterclaims. How can, how can we, how can we defend a motion for contempt based on litigating the counterclaims when the judge later goes and says, well, I'm going to consider all these other things too, that are effectively outside the pleadings. Well, because, I mean, I think he can do it now. I understand Mr. Doherty's concession he just made, but, but, but you, you make the point that it was a good faith counterclaim. Good faith implies in, I mean, I think that's where Judge Nail started to talk about all this other stuff. It's not really good faith when you, when you engage in fraudulent conduct to, to, to get these reaffirmation agreements. And so I think that's where it, I mean, I think that's where this disconnect is and I think we're going to have to wrestle with. But Mr., Mr. Byers and the bank paid for those sins in state court, your honor. Um, that is not, that is not the same thing as a willful violation of the discharge injunction, giving rise to punitive damages and attorney fees. And at the end of the day, um, those were based on litigating the counterclaim and Judge Nail was very specific about that in his 2016 decision. Uh, Roscoe is in North Central South Dakota. It is, yes it is. It's probably halfway between Mobridge and Aberdeen, your honor. Uh, the, there is, I'm trying to remember exactly what's in the record. The state court, um, uh, several times refers to Mr. Byers as the owner of the bank. I, I, I'm sorry, your honor. I don't know whether he was 100% owner of the bank. He clearly had at least a controlling interest in First State bank. Thank you. It's all right. Counsel, thank you for your presentations and the case is submitted. Stand aside.